## General Accident Insurance Co. v. Eyer

*George F. Douglas Jr.,* for plaintiff.
*Deborah Packer,* for defendant.

HESS, *J.,* July 24, 1990 — This is an action in which plaintiff, General Accident Insurance Com-

pany, seeks a declaration to the effect that it does not owe a duty of defense or coverage to either Kirk L. Eyer or his mother, Betty Jane Eyer, in a certain lawsuit involving them as defendants and Jacqueline Stone and Rodney Drawbaugh as plaintiffs. Specifically, General Accident denies coverage with respect to an automobile accident that occurred on June 10, 1989, when defendant, Kirk Eyer, operating a 1978 Chevrolet Malibu titled to his mother's name, collided with a vehicle occupied by Stone and Drawbaugh. We took testimony in this declaratory-judgment case on June 8, 1990. The principle facts are essentially undisputed.

Betty Eyer resides with her children in a rural area of Cumberland County near Newburg. A rather long driveway extends from their dwelling home to the public road. It is primarily on this driveway that Kirk had driven his mother's Chevrolet Malibu while doing repairs to the vehicle. On the other hand, from the time she had purchased the Malibu, as a used car, Betty Eyer had not permitted Kirk to drive the car on a public thoroughfare with the exception of the last few miles home from the car dealership and on one or two occasions when he was taking his girlfriend back to her home.

On or about June 6, 1989, Mrs. Eyer left for a camping trip to Canada along with family and friends in a rented van. Before leaving, Mrs. Eyer locked all of the doors of the Malibu and took both sets of keys to the vehicle. Mrs. Eyer then forbade her son Kirk to operate the vehicle while she was gone, using words to the effect of "Don't touch my car. . ." After she had locked the car and put the keys in her purse, Kirk switched the keys, putting an old set in her purse. On June 10, 1989, while Betty Eyer was still in Canada, Kirk drove the Malibu on a public road and became involved in an

intersection collision with Jacqueline Stone and Rodney Drawbaugh.

The automobile policy, issued by General Accident Insurance Company, provides for the payment of damages "for bodily injury or property damage for which any insured becomes legally responsible because of an automobile accident." Paragraph B of the policy goes on to define "insured" as:

"(B) 'Insured' as used in this Part means:

"(1) You or any 'family member' for the ownership, maintenance or use of any auto or 'trailer.'

"(2) Any person using 'your covered auto.' "

The accident involving Kirk would have been covered under this section but for the liability coverage exclusion in the policy which provides as follows:

"(A) We do not provide Liability Coverage for any person:

"(8) Using a vehicle without a reasonable belief that that person is entitled to do so."

General Accident Insurance Company argues that, because Mrs. Eyer forbade the use of the Malibu vehicle by her son Kirk, the above exclusionary language is applicable to the accident of June 10, 1989. Were this the end of the factual inquiry, their contention would be correct.

While we cannot permit sympathy to rule in our deliberation of this matter, the fact that Mrs. Eyer is of extremely modest means is otherwise relevant. Notwithstanding her gainful employment, her living standard in June 1989 was something barely above subsistence. In fact, her trip to Canada was feasible only because expenses were kept to a minimum and shared with others. She was, thus, greatly concerned with expenses that she was to face in the near future, particularly those having to do with the maintenance of her Chevrolet Malibu. Specifically, the transmission on the vehicle had begun to wear

and Mrs. Eyer was most concerned as to how she would afford the cost of replacing it. Prior to Mrs. Eyer's leaving for Canada, Kirk had located a transmission and it was his intent, while his mother was out of town, to install the transmission without cost to his mother. It was, in fact, after the transmission was installed and while on a test drive that Kirk was involved in the automobile accident which is the subject of the underlying civil suit brought to 3058 Civil 1989.

In the plaintiff's trial brief, there are five cases cited in support of their legal argument that General Accident owes no duty of coverage to the Eyers. Each of those cases, however, involves situations in which the owner of the vehicle in question gave it to a relative with strict instructions that no one else was to drive the vehicle. Each of these cases, in turn, involves a situation where accidents occurred while the vehicle was being driven by someone other than the relative to whom the automobile was given. These cases, generally, deal with the question of whether or not the operators of the vehicles had express or implied "permission" to drive.

These cases deal with questions of construction which are not now before us. It goes without saying that we are not required to construe any language other than that contained in the policy at issue. The policy sub judice provides as the only applicable exclusion to blanket coverage, for a family member using the automobile, the use of a vehicle "without a *reasonable* belief that that person is *entitled* to do so."* Thus, under the General Accident Insurance Policy in question, the issue in this case is not what

---

\* The plaintiff argues that Kirk was not "entitled" to operate the vehicle because he had no driver's license. This, however, does not comport with our recollection of the testimony which indicated that he became a licensed driver some months before the accident.

Mrs. Eyer intended at the time she admonished her son not to drive her Malibu or even whether Kirk had "permission," but rather, what were *Kirk's beliefs* and whether they were "reasonable." Simply put, did Kirk believe that he was "entitled" to use the Malibu to install a transmission as a very pleasant surprise for his mother and was this belief reasonable? The answer to both questions is clearly in the affirmative.

Plaintiff would have us interpret the word "entitled" as requiring express permission. That is certainly an arguable interpretation. The law, however, is unmistakably clear that where the language of a policy, prepared by an insurer, is susceptible to more than one construction, we are required to resolve such differences in favor of the insured. *Cohen v. Erie Indemnity Co.*, 288 Pa. Super. 445, 432 A.2d 596 (1981). This we do.

## ORDER

And now, July 24, 1990, after hearing and careful consideration of the testimony therein adduced, we find in favor of defendants and against plaintiff, General Accident Insurance Company. The court finds and declares that the said plaintiff owes to the defendants, Kirk L. Eyer and Betty Jane Eyer, a duty of defense and coverage with respect to claims arising out of an automobile accident that occurred on June 10, 1989, the subject of a suit filed in Cumberland County at Docket no. 3058 Civil 1989.